## ESTATE OF ELIZ. H. STEWART, IN TRUST.

APPEAL BY H. S. WALKER, TRUSTEE, FROM THE COURT OF
COMMON PLEAS OF MONTGOMERY COUNTY.

Argued February 2, 1891—Decided February 16, 1891.

1. When a trustee seeks to show that the trust fund in his hands, or a
   portion thereof, was converted into an ordinary debt, or a loan from his
   cestui que trust to himself, the burden of proof is upon him to establish
   the fact by clear and satisfactory evidence; the presumptions are all
   against him.

2. A release of the trustee, purporting to have been executed by the ces-
   tui que trust several years after the transaction alleged, unattested,
   without consideration stated and with interlineations, produced by the
   trustee without proof of execution and delivery save by opinions as to
   signature, was properly rejected.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOL-
LUM and MITCHELL, JJ.

No. 337 January Term 1890, Sup. Ct.: court below, num-
ber and term not given

On June 22, 1888, the petition of R. T. Stewart, executor
of the will of Elizabeth H. Stewart, was filed, praying upon
the facts therein set forth for a citation upon Harry S. Wal-
ker, trustee, requiring him to file an account.   A rule having
been granted, the respondent, on September 4th, filed an an-
swer with a statement of account attached, to which the peti-
tioner on October 25th, filed a specific replication and prayed
for the appointment of an auditor.   On December 3d, after
argument upon petition, answer and replication, the court,
SWARTZ, P. J., citing §§ 15–19, act of June 14, 1836, P. L.
632, held that the Court of Common Pleas had jurisdiction
over a trust created by deed, and appointed *Mr. J. V. Gotwals*,
auditor, " to take testimony and report to the court what, if
anything, is still in the hands of said Harry S. Walker, as
trustee under his appointment."

On October 7, 1889, after hearing the testimony presented,
the auditor filed the following report:

### Auditor's Report.

William Rossiter and wife, by deed dated April 1, 1870, and recorded, granted and conveyed a certain messuage and lot of land, situate in the borough of Norristown, to John McKay, in trust, as follows :

" For the sole and separate use of Elizabeth H. Stewart, the wife of Richard T. Stewart, of the borough of Norristown, in the county of Montgomery and state aforesaid, her heirs and assigns forever, and so as she alone or such person as she shall appoint, by and with the consent of the said trustee, shall take and receive the rents, issues and profits thereof, with power to the said John McKay to sell and convey the said messuage or tenement and lot or piece of land and premises, to any person or persons, in fee-simple, and for such sum or sums of money as the said Elizabeth H. Stewart, by writing, under her hand and seal, and duly acknowledged, at any time may appoint and direct, and that free and clear of and from all and every trust or limitation whatsoever."

The consideration for said premises was $7,000 ; $5,000 of which was paid in cash, being money belonging to the said Elizabeth H. Stewart, and the balance, to wit, $2,000 was secured by a mortgage on said premises given by William R. Rossiter to the said John McKay, dated August 11, 1869. The said Elizabeth H. Stewart with her husband, R. T. Stewart, took possession and occupied said premises.

The said John McKay, trustee as aforesaid, died on or about September 30, 1873, and from that time up to December, 1881, the said trusteeship was vacant. The said cestui que trust, Elizabeth H. Stewart, being desirous of raising some money to pay some personal debts and purchase a wedding outfit for her daughter Eliza, it was found necessary to have a new trustee appointed for that purpose. On December 10, 1881, upon the petition of R. T. Stewart and Elizabeth, his wife, the Court of Common Pleas of this county appointed Harry S. Walker, who was a son-in-law, trustee in the place and stead of the said John McKay, deceased, and Thomas W. Walker was approved as surety in the sum of $2,000.

On February 28, 1882, the said Harry S. Walker, as trustee, with the consent and at the special request of the said Elizabeth H. Stewart, in conjunction with her husband, R. T. Stewart, created a mortgage on the property mentioned in said deed

ot trust, to one Mary J. Huston, for the sum of $3,500. The mortgage of $2,000, before mentioned, was paid out of this sum, which left the balance $1,500 to be accounted for by said trustee. The net proceeds, remaining in the hands of said trustee after the payment of all expenses, commissions, attorney fees and the $2,000 mortgage with interest, was $1,263.67. There appears to be no dispute as to the correctness of this amount. It is also admitted that the cash payments and bills made by said trustee, as alleged in his answer are correct.

On April 15, 1888, Mrs. Stewart, the said cestui que trust, died, leaving a last will and testament, dated April 13, 1888, wherein and whereby she made her husband, the said Richard T. Stewart, sole legatee, and appointed him sole executor of her said estate.

On June 22, 1888, the said executor filed his petition in the Court of Common Pleas of said county of Montgomery, alleging that said trustee had not accounted for the proceeds of said mortgage, and therefore prayed for a citation to compel him to file an account in the prothonotary's office of said county. On September 4, 1888, defendant's answer was filed, denying the jurisdiction of said court in the matter, but further answering that he had fully accounted to said cestui que trust in her lifetime, and the manner in which he had accounted and settled with her was set forth. After replication filed, the question of jurisdiction, raised by said answer, was heard and determined by this court in an opinion filed December 3, 1888, and your auditor was appointed " to take testimony and report what, if anything, is still due in the hands of said trustee."

The question of jurisdiction being res judicata by this court, the only matter for the consideration and decision of your auditor is "what, if anything, is still in the hands of said trustee?"

It is claimed that this case comes before your auditor in the nature of a bill in equity, that is, by petition and answer; and it is contended by counsel for defendant that the rules governing equity cases apply in this, and that the answer being responsive to the petition, and denying all its averments, must be taken as conclusive evidence in favor of the defendant, unless overcome by two witnesses, or one witness and corroborating circumstances, and that, under the authority of Cresson's

App., 91 Pa. 168; Campbell v. Patterson, 95 Pa. 447, and Burke's App., 99 Pa. 350, the duty is imposed on the petitioner to sustain his petition by the evidence of one witness besides himself, as petitioner, or by circumstances equivalent to a second witness.

In fact, the defendant has produced no testimony whatever in support of the allegations contained in his answer except as to the signature to the release. The death of the cestui que trust prevents both petitioner and respondent from testifying in their own behalf, and therefore, the application of this rule is especially important. Viewing the petition as a bill in equity, is defendant's answer responsive?

The petition itself does not allege any misappropriation of the trust fund or malfeasance in the trustee, or any wrongful act, but merely sets forth that said defendant, as trustee, received the proceeds of a $3,500 mortgage, and that he failed to file an account in the prothonotary's office, as required to do by law, and therefore prays for a citation to compel him to exhibit and file a true statement and account of said trust fund. The defendant answers that the sum of $500 is still due, but claims that he owes this amount individually and not as trustee; that, when said loan was effected, Mrs. Stewart, the cestui que trust, who was his mother-in-law, agreed to loan and did loan this amount to him; that, in fact, $500 of said loan was expressly borrowed by said cestui que trust to lend to this defendant; that this fact was and always has been fully known to the petitioner; that said Elizabeth H. Stewart was alone entitled to said money, and defendant was alone responsible to her for the accounting thereof; that, in pursuance of said agreement and understanding with her in her lifetime, she afterwards, to wit, on January 31, 1888, signed, executed and delivered to him as such trustee, a release or receipt under seal, releasing him of all responsibility for the moneys owing and due her on account of said trusteeship.

While this answer might be considered responsive in part, it really sets up entirely new and distinct and independent facts, not stated in the bill, and introduces a defence in confession and avoidance, which is not responsive. In Eaton's App., 66 Pa. 483, it was held that " when the plaintiff calls on the defendant to answer the allegations of the bill, he makes

the defendant a witness for that purpose, but for no other." " Any subsequent, independent and distinct fact not stated in the bill is not responsive." His Honor, Justice SHARSWOOD, says, inter alia, " But he cannot make himself a witness generally and introduce other (independent) facts in avoidance or defence." An affirmative fact, averred by the answer in avoidance of the averment in the bill, must be proved, like any other affirmative averment in pleading: 2 Story's Eq., § 1529. It would seem, therefore, that the only question raised by the petition itself, considered as a bill in equity, is the filing of an account and the jurisdiction of the court.

The bill is completely answered when an account has been filed, so far as anything contained in the said petition is concerned. But, when we come to examine and consider the new and independent facts set forth in the answer and the replication filed thereto by said petitioner, denying the same, several very important questions are raised, as follows:

1. Were $500 of this loan expressly borrowed by said cestui que trust, to lend to said Harry S. Walker?

2. Was this amount loaned to said Walker, individually, and with the understanding that he was to be liable and responsible only in that way?

3. Has the release been legally and properly proven?

4. Is the signature to said receipt or release, the genuine signature of Elizabeth H. Stewart, and if so, was it obtained through fraud, deceit or misrepresentation?

These are questions of fact and their determination and decision must depend upon the testimony produced before your auditor in support thereof.

The burden of proof is upon the defendant; and, as already stated, the answer not being responsive to the bill in this respect, and the defendant having called no witnesses, and produced no testimony in support of the two first propositions, to wit, " that $500 of this loan was borrowed by said cestui que trust expressly to lend to the defendant," and " that this sum was loaned to him individually, etc," the defendant is left without any evidence whatever to establish these averments in his answer, and your auditor therefore must find that they are not sustained. Assuming, however, that defendant's counsel is correct, and that in regard to these two averments, the

answer is responsive to the bill, and must be taken as true, still the principle decided in Cresson's Appeal, supra, and kindred cases, cannot avail the defendant, for the reason that the answer, as to these allegations, is not only contradicted by the replication and corroborating circumstances, but also by the positive testimony of two disinterested witnesses.

Mrs. Eliza Harrison and Mary A. Stewart, two daughters of Mrs. Stewart, both testify that the borrowing of this money was talked about frequently in Mr. Walker's presence and the presence of the family, and it was understood by Mr. Walker that the money was raised for the purpose of paying off some personal debts, and more particularly to pay for a wedding outfit for Eliza, who was about to be married. After the money was obtained Eliza says, " Harry (meaning Walker) said to mother, ' I have $500 still at the People's Bank, which I will keep there subject to your order to defray the expenses of the wedding outfit,'" and again, " Mother said it must be ready when I want it." It appears that all the money borrowed was absorbed for the payment of debts then due, except the $500 which was to be used for the wedding outfit, so that out of this loan, if used for the purpose for which it was created, there was nothing left to loan to said Walker. Miss Mary says: " It was understood by Mr. Walker, and in the presence of the family, that this money was borrowed expressly for the purpose of buying my sister's wedding outfit." Again, in cross-examination: " It was not let rest; it had been asked for at various times. My mother at various times asked for the money and wrote to Thomas A. Walker, the old gentleman, twice, and, because she could not get it from either, she was obliged to borrow it from J. M. Albertson, the banker, to supply Eliza's needs for the time."

Here are two witnesses whose testimony is in direct conflict with the answer of defendant; and, in addition, when we consider the surrounding and corroborating circumstances, the fact that said cestui que trust had barely sufficient income for the support and maintenance of herself and family, when it is not pretended even that any security was ever given or offered for said loan, not even a note or any other evidence of indebtedness, the improbability of the answer in this respect is apparent. Is it likely under such circumstances, said cestui que

trust would borrow money and make her estate liable, for the express purpose of loaning it to defendant, when it was well known he was without means and possessed no property, either real or personal, and no security was offered or given? Your auditor, therefore, under all these facts and circumstances, must conclude that the answer, even if responsive, as to the two first inquiries, is contradicted and overthrown by the evidence.

This brings us to the third inquiry, raised by the answer and replication, whether the release offered in evidence has been legally and properly proven.

The defendant presents as a bar to a recovery in this case, and in full settlement thereof, a receipt or release under seal, purporting to be signed, sealed and executed by the cestui que trust in her lifetime, dated January 31, 1888. Considering all the facts and circumstances in testimony, your auditor is of the opinion that this paper, because of its material defects and want of proper proof must be rejected.

When we consider the fact that defendant has failed to establish the averments in his answer as already set forth, and has thus attempted to escape liability and responsibility as trustee, when in his answer he admits he still owes $500 individually, and yet says nothing about the terms and conditions of the loan, when or how the same was to be paid, nor anything about any interest paid or which may still be due, although nearly six years had elapsed when the release is said to be executed, and when we are further reminded that here we have an account between trustee and cestui que trust, which may be designated a confidential agency, wherein the court requires from the trustee an open and candid disclosure in his dealings with his cestui que trust, and the strictest accountability in the disbursement of funds in his hands, on account of this relationship, confidence and responsibility, no inference or presumption will be drawn against the cestui que trust. A debtor and creditor often deal at arms length, and frequently advantage may be taken through ignorance and over-confidence for which the law gives no remedy. Not so with trustees in the management and settlement of trust estates. Where there is a contest and dispute as to the proper disposition of trust funds, the trustee is called upon to satisfy

the conscience of the court, that he has acted openly, fairly and honestly. Applying these principles and considering these facts, a court of equity, in this case, will require the most clear and positive proof to sustain this release.

This paper upon its face shows two interlineations which are not noted in any attestation clause, and about which the testimony is conflicting, and evidence not satisfactory as to where inserted. The paper itself shows the use of different inks, not satisfactorily explained. There are no witnesses noted, and no testimony showing how it came into the possession of the defendant; nor, that it was signed, sealed and delivered by said cestui que trust; no consideration mentioned and no explanation with reference thereto accounting for this omission, and the release was not signed and delivered until nearly six years had elapsed after the account was settled according to the allegations of defendant. Well may a chancellor hesitate to sustain a release under such conditions, unless the same is established by the most substantial and convincing proof.

Has such proof been produced? We think not. As already stated, there was no attestation clause on the paper and no witnesses present when the same was signed, sealed and delivered. To overcome this difficulty, the defendant attempts to prove the handwriting of said cestui que trust. He calls two witnesses upon whose testimony alone he must rely. There is not a single corroborating fact or circumstance to sustain the paper. The witnesses called were Samuel S. Price and Herbert L. Kirk, both of them residents of Philadelphia, and clerks in the office of the Pennsylvania Company for Insurance on Lives, etc. It appears Mrs. Stewart had a trust in this company, upon which she drew an allowance or income every month, and these witnesses testify that they are acquainted with her signature, having seen her write it frequently, and pronounce this signature to the release genuine.

Whilst under the law competent to testify, yet the force and effect of Mr. Price's testimony was very much weakened on cross-examination, when he admitted that this paper was brought to him a week before and he compared it with other signatures in their office. He says: "I compared it with other signatures there; I said it was her signature when I first saw it, and compared it with other signatures to verify it." From this tes-

timony, it would seem that the witness was not absolutely
certain, and, to sustain his belief, he does that which the law
will not permit, to wit, makes a comparison.    Whilst this may
not disqualify him, it certainly does weaken his testimony.
The witness further justifies his belief from the fact that there
are certain peculiarities in the signature, " one of which is
the omission of ' b ' in Elizabeth."    Your auditor fails to see
how this can strengthen his opinion, for the reason that these
peculiarities can be simulated, and naturally would be, the
same as any other signature or peculiarity.    Herbert L. Kirk,
the other witness, is a young man and an officer in the same
company as Mr. Price, and he only saw Mrs. Stewart write her
signature four or five times.

Neither of these witnesses had any personal acquaintance-
ship with Mrs. Stewart, and no knowledge of her handwriting
whatever, except that obtained from seeing her write her signa-
ture at their office in Philadelphia.    Whilst they both appear
to be perfectly honest and candid, and no doubt testify to what
they believe to be true, yet your auditor is of the opinion that
their testimony is not sufficient upon which to base a certain and
definite conclusion, and thus overcome the presumptions aris-
ing from the other facts and circumstances of the case.

As to the two interlineations, Mr. Massey testifies that the
body of the paper is in his handwriting and that both of said
interlineations were made by him before the same was signed,
but as to one of these, " trusteeship or said," Mr. Price and
Mr. Kirk, defendant's two witnesses, as well as Mr. Beerer, an
expert on inks, called by the petitioner, in their testimony differ
from Mr. Massey, and the paper and writing itself distinctly
show that the ink in the words " trusteeship or said " is differ-
ent from the body of the paper and appears to be similar to
that of the signature and date.    Whilst there is considerable
doubt as to when these words were inserted, your auditor can-
not say that these interlineations of themselves vitiate the paper.
The authorities cited by defendant's counsel, to wit: Robinson
v. Myers, 67 Pa. 16, and Jordan v. Stewart, 23 Pa. 249, sus-
tain his position, that even if the interlineations were made
with the same ink as the signature and date, the presumption
still would be that they were made before signing.

Another objection to this paper is that no consideration is

mentioned and that the amount thereof is left blank.   There
is not any evidence before your auditor, showing that anything
was paid to said cestui que trust, either before or at the signing
and execution of said alleged release.   It has been decided
that the consideration is a material part of a deed.   In the case
of Moore v. Bickham, 4 Binn. 1, it was held in an action of
ejectment, that a purchaser of land is not bound to accept a
deed of bargain and sale in which there was a blank left for
the consideration, and in that case the grantors had authorized
their agent to fill the blank.   The learned C. J. TILGHMAN,
in delivering the opinion of the court, says : " The considera-
tion is a material part of the deed.   It is necessary in order to
give it operation.   It matters not how small, but some consid-
eration must be mentioned.   This may seem a captious objec-
tion, but it is really of importance."   Whilst a release may not
in all respects require the same particularity as a deed which
involves the title to land, yet, without some consideration men-
tioned, it is certainly defective and imperfect.   Neither is there
any evidence to explain why the amount was left blank.

It may be contended that there is a consideration mentioned,
to wit : " the full amount received by the said Harry S. Wal-
ker, as trustee, from Holstein DeHaven," etc.   Then, why was
the space left blank ?   Surely the said trustee at the time the
paper was drawn, knew that the exact amount borrowed was
$3,500, and for that amount he had to account to his cestui
que trust.   It is therefore incumbent on said defendant to ac-
count for this defect, and this being a contest between the rep-
resentatives of a cestui que trust and her trustee, so much the
more does the law require a plain, clear and satisfactory ex-
planation of everything connected with the transaction.

Therefore, with all these defects, unexplained and unac-
counted for, the paper not signed and delivered in the presence
of any witnesses, executed nearly six years after the account
between the parties was fully settled as set forth by defendant's
answer, and the signature thereto not established by clear and
conclusive proof, your auditor is compelled, upon the testimony
produced by the defendant alone, to reject this paper.   This
leaves the defendant without any testimony to support his
answer, and it is unnecessary to consider and decide the fourth
inquiry.

Opinion of Court below.

The defendant having failed to show that the $500 he still owes is an individual debt, and also not having shown or even claimed that any interest has been paid thereon, your auditor finds that there is still in the hands of Harry S. Walker, trustee as aforesaid, the sum of $500 with interest thereon from March 7, 1882, the time it is admitted the money was received.

—To the foregoing report, accompanied by a statement of an account against the trustee, the latter filed exceptions alleging that the auditor erred :

1. In rejecting the release executed by Elizabeth H. Stewart in her lifetime.

2. In finding that the trustee owed said estate any trust money.

3. In not dismissing the petition.

Said exceptions having been argued, the court, WEAND, J., on December 2, 1889, citing §§ 15–19, act of June 14, 1836, P. L. 632, entered a decree ordering that the said Harry S. Walker, trustee for Elizabeth H. Stewart, file in the Court of Common Pleas, etc., an account of all moneys received and expended by him, as such trustee, within twenty days from said date.

On January 6, 1890, by paper filed, it was agreed by the parties that the auditor's report should be considered as though the trustee had filed the account which he had annexed to his answer and on exceptions thereto the auditor had made his report, and that the court should decide the case on the exceptions filed to the report and the argument already made thereon. Thereupon, on February 3, 1890, the court, WEAND, J., filed the following opinion :

This matter now stands before us as though the accountant had filed his account, in which he took credit for a certain sum which he claims had been loaned to him by Mrs. Stewart, thus releasing him as trustee. This was a matter of fact to be shown affirmatively by the accountant. The auditor has found the evidence unsatisfactory and insufficient for the purpose claimed, and has surcharged him with the amount. We see no good reason for disturbing this finding, and therefore must dismiss the exceptions and confirm the report.

And now February 3, 1890, the exceptions filed by Harry S.

Walker, trustee, are dismissed and the auditor's report is confirmed ; the costs to be paid by the accountant.

—Thereupon, the exceptant took this appeal, specifying that the court erred in dismissing the exceptions to the report of the auditor and in confirming the said report.

*Mr. N. H. Larzelere* (with him *Mr. M. M. Gibson*), for the appellant.

As to the jurisdiction, counsel cited: Sections 15, 19, act of June 14, 1836, P. L. 632; Sharswood v. McClelland, 2 Am. L. R. 572. That the answer was responsive: Burke's App., 99 Pa. 350; Cresson's App., 91 Pa. 169; Eaton's App., 66 Pa. 490; Audenreid's App., 89 Pa. 114; Campbell v. Patterson, 95 Pa. 447; Nulton's App., 103 Pa. 286. That the release was sufficiently proven: Travis v. Brown, 43 Pa. 12.

*Mr. Chas. Hunsicker*, for the appellee.

PER CURIAM:

While there is a conflict of evidence in this case, we cannot say that the learned auditor has erred in his findings of fact. With the facts established, his conclusions follow logically. When a trustee seeks to convert the trust funds, or a portion thereof, in his hands, into an ordinary debt, or a loan from his cestui que trust to himself, he must do so by clear and satisfactory evidence. The presumptions are all against him, and the law looks with jealousy upon such transactions. It exacts the highest good faith on the part of the trustee, and the burden is upon him of showing it. The parties are not dealing at arms length, nor upon equal terms. We find nothing to justify us in reversing the auditor and court below.

The decree is affirmed and the appeal dismissed, at the costs of the appellant.